IN THE UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

| | | |
|---|---|---|
| IN RE: | JOHN W. FRITSCHEN | NO. 4:05-bk-26807 |
| | | (CHAPTER 7) |
| | Debtor. | |
| ELIZABETH FRITSCHEN | | PLAINTIFF |
| VS. | 4:05-AP-1386 | |
| JOHN W. FRITSCHEN | | DEFENDANT |

### MEMORANDUM OPINION

On October 14, 2005, John W. Fritschen ("Debtor") filed a voluntary petition for relief under the provisions of Chapter 7 of the United States Bankruptcy Code. Elizabeth Fritschen ("Plaintiff"), the Debtor's former spouse, filed her complaint on December 29, 2005. In her complaint, the Plaintiff seeks a denial of the Debtor's discharge because of inaccurate and incomplete schedules pursuant to 11 U.S.C. § 727(a)(2) and 11 U.S.C. § 727(a)(4). In the alternative, she seeks to except from discharge a Household credit card debt in the amount of $10,038.00, plus accrued interest. The Plaintiff alleges that the debt was designated to be paid by the Debtor in the parties' divorce decree and, thus, that it is nondischargeable pursuant to 11 U.S.C. § 523(a)(5) and 11 U.S.C. § 523(a)(15). (Pl.'s Ex. 1.) The Debtor responded to the complaint on January 30, 2006.

A hearing on the complaint was held on June 16, 2006, in Little Rock, Arkansas. At trial, the Plaintiff conceded that 11 U.S.C. § 523(a)(5) was not applicable. At the conclusion of the hearing, the Court made an oral ruling that the Plaintiff had not established grounds to deny the

1

discharge pursuant to 11 U.S.C. § 727, and the objection to discharge was overruled. The complaint to determine dischargeability pursuant to 11 U.S.C. § 523(a)(15) was taken under advisement.

The proceeding before the Court is a core proceeding in accordance with 28 U.S.C. §157(b)(2)(I), and the Court may enter a final judgment in this case. The following shall constitute findings of fact and conclusions of law as required by Federal Rule of Bankruptcy Procedure 7052.

## I.
## FACTS

The Plaintiff and the Debtor were married in November of 1990 and separated in July of 2004. They have one minor child who is approximately eight years of age. A divorce decree was filed on September 7, 2005, after a contested hearing in the Circuit Court of Lonoke County, Arkansas. The decree incorporated a child custody agreement and partial property settlement that the parties had previously entered into. The Plaintiff was named as the child's primary physical custodian with the Debtor awarded visitation on every other weekend, two Wednesday evenings a month, certain holidays, and six weeks of the child's summer vacation.

The circuit court ordered that neither party was obligated to pay any alimony/spousal support at the time of the decree or in the future. The partial property agreement awarded ownership of a 2001 Mitsubishi Diamante to the Plaintiff and ownership of a 1998 Nissan Maxima to the Debtor. The agreement also stated that the Debtor would pay the Plaintiff the sum of $1354.17, one-half of the amount he received when he cashed in his retirement account. The Debtor received one-half of the Plaintiff's vested retirement benefits and one-half of all stock and stock options purchased through the Plaintiff's employment with Kohl's Department

Store from the date of marriage.

The circuit court assigned personal property and marital debt, including a designation that the Debtor would be solely responsible "for the Household credit card . . . in the amount of $10,038.00.  Husband [Debtor] hereby agrees to indemnify and hold wife [Plaintiff] harmless from any and all liability or obligation therefor." (Pl.'s Ex. 1.)  Under the decree, the Debtor is also solely responsible for the following marital credit card debts: "BankAmericard (account number ending 4156), Capitol One VISA (account number ending 1493), Capitol One MasterCard (account number ending 4820), First USA, Chase (account number ending 2236), MBNA (account number ending 6469) . . . . "[1] (Pl.'s Ex. 1.)  The Plaintiff is solely responsible for the following marital credit card debts: "Capitol One with an account balance of $1,968.77, Dillard's (account number ending 9114), Bank of America (account number ending 3296), Chase (account number ending 6304), Talbot's (account number ending 7568), Best Buy (account number ending 4418), Kohl's (account number ending 9352), Conoco (account number ending 9198), Commerce Bank (account number ending 2609) and Bank of America, . . . ." (Pl.'s Ex. 1.)

Approximately a month after the divorce, the Debtor filed his Chapter 7 bankruptcy petition.  The schedules do not specifically list the Household credit card debt.  (Pl's. Ex. 2,3,4.)  The Debtor admitted at trial that he did not list the debt in his petition.  Although the Household credit card debt was assigned to the Debtor in the divorce decree, the statement was sent to the Plaintiff at her address beginning in January of 2005.  The Plaintiff testified that she had brought

---

[1] The divorce decree refers to an affidavit of financial means that the court consulted in dividing the marital debt, but the affidavit was not placed in the record in the bankruptcy hearing.

3

the balance owed current and had made all the payments on the credit card for the past year.

The Plaintiff introduced several of the Debtor's schedules at trial. (See Pl.'s Ex. 2,3,4.) His Schedule I reveals that at the time the petition was filed, he made $2421.09 a month in sales at Express Personnel Services, less $522.50 in social security and payroll taxes and $342.34 in child support paid to the Plaintiff, leaving him with a net monthly income of $1556.25.

The Debtor's Schedule J reveals the following monthly expenses:

| | |
|---|---:|
| Rent or Home Mortgage Payment | $ 575.00 |
| Electricity | 60.00 |
| Telephone | 150.00 |
| Internet | 75.00 |
| Food | 350.00 |
| Clothing | 75.00 |
| Laundry and Dry-cleaning | 25.00 |
| Medical and Dental Expenses | 125.00[2] |
| Transportation | 60.00 |
| Recreation | 10.00 |
| Auto Insurance | 102.00 |
| Personal Property Tax/Auto Registration | 10.00 |
| Auto Installment Payments | 94.32 |
| Automobile Repair & Maintenance | 50.00 |
| Total expenses | $ 1761.32 |

(Pl.'s Ex. 4.)

The Debtor testified that shortly after his bankruptcy filing, he acquired a roommate who pays $300.00 a month toward household expenses. The roommate's contribution reduces the Debtor's total monthly expenditures to $1461.32. Subtracting expenses from income yields a total monthly disposable income of $94.93.

---

[2] The divorce decree required the Debtor to pay one-half of all uninsured expenses related to medical, dental, and drug costs incurred by the parties' son. Presumably, this figure includes the Debtor's estimate of his share of those monthly expenses as well as his own medical and dental expenses.

The Debtor's schedules reveal that he owns no real property. He stated at trial that the parties sold their home prior to or during the pendency of the divorce but did not realize any gain from the sale. Schedule B–Personal Property shows that the Debtor owns only a small checking account, a rent deposit, clothing, household furnishings, golf clubs, and a vehicle worth $3000.00 that is collateral for the loan on the vehicle. The most substantial asset is $14,000.00 in pension rights that the Court assumes cannot be liquidated at this time. The Debtor does not have a retirement account of his own.

The Debtor's statement of financial affairs demonstrates that he was unemployed for a period of months during 2004 before he began working at his current job. At the hearing, he stated that his parents advanced him $15,000.00 to $20,000.00 to help defray the legal fees and other expenses associated with the separation and divorce.

There is no testimony or evidence in the record regarding the Plaintiff's monthly expenses or net monthly income. The Plaintiff did testify that she made $62,000.00 a year, that she was the primary care giver to their minor child, that she received child support, and that she found it difficult to pay her bills.

## II.
## ARGUMENT

The Plaintiff argues that the Debtor's Household credit card debt of $10,038.00, assigned to him via the divorce decree, is nondischargeable pursuant to 11 U.S.C. § 523(a)(15). The Plaintiff alleges that the Debtor failed to meet his burden of proof to establish that the debt is dischargeable under 11 U.S.C. § 523(a)(15).

## III.
## DISCUSSION

Section 523(a)(15) provides that a debtor may not except from discharge a nonsupport debt incurred by the debtor in the course of a divorce or separation decree unless:

> (A) the debtor does not have the ability to pay such debt from income or property of the debtor not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor and, if the debtor is engaged in a business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business; or
> (B) discharging such debt would result in a benefit to the debtor that outweighs the detrimental consequences to a spouse, former spouse, or child of the debtor;

11 U.S.C. § 523(a)(15)(A)&(B) (2006).

Thus, section 523(a)(15) excepts from discharge debts that are not for support but that arise out of divorce proceedings, unless it is proved that the debtor does not have the ability to pay or that the benefit of discharge outweighs the detrimental consequences to the former spouse. Sturdivant v. Sturdivant (In re Sturdivant), 289 B.R. 392, 399 (Bankr. W.D. Ark. 2003).

The nondebtor spouse has the initial burden of proving that the debt is one incurred in connection with a divorce and is in the nature of a property settlement debt as opposed to a debt for maintenance or support. Sturdivant, 289 B.R. at 933 (citing Strayer v. Strayer (In re Strayer), 228 B.R. 211(Bankr. S.D. Ind. 1996); Gantz v. Gantz (In re Gantz), 192 B.R. 932 (Bankr. N.D. Ill. 1996); Florio v. Florio (In re Florio), 187 B.R. 654 (Bankr. W.D. Mo. 1995); Silvers v. Silvers (In re Silvers), 187 B.R. 648 (Bankr. W.D. Mo. 1995)).

Once the debt is established to be a nonsupport divorce obligation, the debt falls within the ambit of section 523(a)(15). The burden of proof shifts to the debtor to show either that he is unable to pay the debt or that the benefit to the debtor of discharging the debt outweighs the detriment that will be suffered by the former spouse. Sturdivant, 289 B.R. at 400 (citing Moeder v. Moeder (In re Moeder), 220 B.R. 52, 56 (B.A.P. 8th Cir. 1998)(citing Jodoin v. Samayoa (In

6

re Jodoin), 209 B.R. 132, 139-40 (B.A.P. 9th Cir. 1997); Johnson v. Rappleye (In re Rappleye), 210 B.R. 336, 340 (Bankr. W.D. Mo. 1997); Williams v. Williams (In re Williams), 210 B.R. 344, 346 (Bankr. D.Neb. 1997); Wellner v. Clark (In re Clark), 207 B.R. 651, 655-56 (Bankr. E.D. Mo. 1997); Scigo v. Scigo (In re Scigo), 208 B.R. 470, 473 (Bankr. D.Neb. 1997); Wynn v. Wynn (In re Wynn), 205 B.R. 97, 101 (Bankr. N.D. Ohio 1997); Schmitt v. Eubanks (In re Schmitt), 197 B.R. 312, 316 (Bankr. W.D. Ark. 1996); Johnston v. Henson (In re Henson), 197 B.R. 299, 303 (Bankr. E.D. Ark. 1996); Bodily v. Morris (In re Morris) 193 B.R. 949, 952 (Bankr. S.D. Cal. 1996))).

In examining a debtor's ability to pay the nonsupport divorce debt under section 523(a)(15)(A), the inquiry is twofold. First, the focus is on whether a debtor's essential and discretionary expenditures are reasonably necessary. If so, then the next question is whether those expenditures leave sufficient disposable income to pay the debt within a reasonable time. Wallander v. Wallander (In re Wallander), 324 B.R. 746, 754-55 (Bankr. N.D. Iowa 2005).

The "reasonably necessary" standard allows "some latitude regarding discretionary spending for items such as recreation, clubs, entertainment . . ." Lee v. O'Shaughnessy (In re O'Shaughnessy), 301 B.R. 24, 31 (Bankr. N.D. Iowa 2003) (quoting In re Gleason, 267 B.R. 630, 633 (Bankr. N.D. Iowa 2001)(citing In re Gonzales, 157 B.R. 604, 608 (Bankr. E.D. Mich. 1993))). It is not to be equated with a more stringent, undue hardship standard. Beggs v. Niewdach (In re Beggs), 314 B.R. 401, 417 (Bankr. E.D. Ark. 2004) (citing In re Beck, 298 B.R. 616, 623-624 (Bankr. W.D. Mo. 2003) (citing Moeder v. Moeder (In re Moeder), 220 B.R. 52, 54-55 (B.A.P. 8th Cir. 1998))). But while debtors have more latitude regarding discretionary spending under the applicable standard, they must also evidence "a serious effort to pay

creditors by eliminating unnecessary and unreasonable expenses." Mesenbrink v. Eiklenborg (In re Eiklenborg), 286 B.R. 718, 722 (Bankr. N.D. Iowa 2002) (quoting In re Beckel, 268 B.R. 179, 183 (Bankr. N.D. Iowa 2001) and citing In re Gleason, 267 at 633).

In this case, the Plaintiff does not contend that any of the Debtor's listed expenses are unreasonable or unnecessary. The Debtor has frugally trimmed $300.00 from his budget by sharing fixed expenses with a roommate, thus enabling him to live within his means. Additionally, the Court observes that the Debtor's monthly expenses are virtually devoid of any discretionary spending that might arguably be pared from his budget as unreasonable or unnecessary. With the exception of a meager $10.00 a month allocated for recreation, the Debtor's expenses provide for a very basic lifestyle. It appears from the schedules that the Debtor does not even pay for television service. For these reasons, the Court finds that the Debtor has carried his burden of proving that his monthly expenses are reasonable and necessary.

As to whether the Debtor has sufficient disposable income to pay the Household credit card debt, the Court concludes that he does not. The record reflects that the Debtor's disposable income is $94.93, but that figure is deceptively high. As noted, the Debtor's budget contains virtually no discretionary expenditures. This means that the Debtor, who has child visitation weekends twice a month, must rely on his disposable income if he proposes to take his child to an occasional movie, a baseball game, or dinner at a fast-food restaurant. By the same token, vacations, gifts, charitable contributions, entertainment, and dues and fees related to professional or social organizations must also be funded by the same $94.93 a month.

Moreover, in examining the Debtor's schedules, the Court notes that he is not covered

by health insurance and has no savings account to which he regularly contributes. The absence of these two safeguards leaves the Debtor financially vulnerable to contingencies like serious illness, physical injury, major car repairs, or the necessity of replacing his older model vehicle in the future. Yet paying for health insurance and funding a savings account would likely consume all or a sizeable portion of the Debtor's disposable income.

The debt at issue is $10,038.00 and accrued interest. The record reflects that the account is current, but does not show the amount of the minimum monthly payment. However, no matter what the minimum payment is, the Debtor does not have the ability to pay it. As stated, the Debtor's budget is unrealistic in not providing for more discretionary spending, insurance, and a savings account for future unbudgeted necessities. Adding such expenses would completely absorb the Debtor's disposable income.

Furthermore, a review of the Debtor's schedules demonstrates that he has no appreciable assets to liquidate so that the proceeds may be applied to defray the debt. His most valuable asset is his interest in his former spouse's retirement account, which is presumably not subject to liquidation.

## IV

## CONCLUSION

The record establishes that the Debtor's expenses are reasonably necessary, he lacks sufficient disposable income to pay the debt at issue, and, therefore, he does not have the ability to pay the debt. Pursuant to 11 U.S.C. § 523(a)(15)(A), the Debtor's obligation to the Plaintiff to pay the Household credit card debt is determined to be dischargeable. Because the Debtor has proved he is unable to pay the debt, it is unnecessary to examine whether the benefit of his

discharging the debt outweighs the detriment to his former spouse pursuant to 11 U.S.C. § 523 (a)(15)(B).

    IT IS SO ORDERED.

*[signature: James G. Mixon]*

THE HON. JAMES G. MIXON
U. S. BANKRUPTCY JUDGE

DATE: Nov. 9, 2006

E.O.D. 11/9/06 by TLW

cc:    Richard L. Ramsay, Chapter 7 Trustee
       D. Floyd Herring, Esq.
       John G. Phillips, Esq.
       Debtor